1  JACOB M. HEATH (STATE BAR NO. 238959)
jheath@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
3  Menlo Park, CA  94025-1015
Telephone:    +1 650 614 7400
4  Facsimile:     +1 650 614 7401

5  Attorney for Defendant
Meta Platforms, Inc.
6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  SHARED.COM,                           Case No. 3:22-cv-02366-RS

13              Plaintiff,                **DEFENDANT'S MOTION TO DISMISS
                                          PURSUANT TO RULE 12(B)(6) AND
14       v.                               MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT**
15  META PLATFORMS, INC.,
                                          Date:        July 13, 2022
16              Defendant.                Time:        1:30 PM
                                          Courtroom:   Courtroom 3 – 17th Floor
17                                        Judge:       Hon. Judge Richard Seeborg

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................2

II. BACKGROUND ...................................................................................................3

III. LEGAL STANDARD ..........................................................................................5

IV. ARGUMENT .......................................................................................................5

    A. The Complaint Fails To State Any Cause Of Action Against Defendants. ..............5

        1. Plaintiff fails to state a claim for breach of contract. ...................................5

        2. Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing. ........................................................................10

        3. Plaintiff fails to state a claim for intentional misrepresentation. ...............12

        4. Plaintiff fails to state a claim for negligent misrepresentation. .................15

        5. Plaintiff fails to state a claim under the UCL. ...........................................16

        6. Plaintiff fails to state a claim for conversion. ...........................................19

    B. Section 230 Of The Communications Decency Act Independently Bars All Liability. .................................................................................................................21

        1. Meta is an interactive computer service provider. .....................................22

        2. The content at issue was provided by another information content provider. ...................................................................................................22

        3. Each of Plaintiff's claims seek to treat Meta as a "publisher." .................23

    C. Plaintiff Should Not Be Granted Leave To Amend. ...............................................25

V. CONCLUSION ...................................................................................................25

1
2
3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

4
5

*Adkins v. Facebook, Inc.*,
  2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019)...................................................................9

6

*AdTrader, Inc. v. Google LLC*,
  2018 WL 3428525 (N.D. Cal. July 13, 2018) ......................................................................13

7

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ...............................................................................19

8
9

*Anderson v. Deloitte & Touche*,
  56 Cal. App. 4th 1468 (1997) .............................................................................................12

10

*Appling v. Wachovia Mortg., FSB*,
  745 F. Supp. 2d 961 (N.D. Cal. 2010) ................................................................................5

11
12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................5

13

*Baltazar v. Apple, Inc.*,
  2011 WL 588209 (N.D. Cal. 2011) ....................................................................................17

14
15

*Bank of New York v. Fremont General Corp.*,
  523 F.3d 902 (9th Cir. 2008) ..............................................................................................21

16

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ..............................................................................22, 23, 24

17
18

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................................7

19

*Brittain v. Twitter, Inc.*,
  2019 WL 2423375, at *4 .....................................................................................................25

20
21

*Calise v. Meta Platforms, Inc.*,
  No. 21-cv-06186-JSW, 2022 WL 1240860 (N.D. Cal. April 27, 2022)..............................23

22

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) ..............................................................................24

23
24

*Carter v. Rasier-CA, LLC*,
  No. 17-cv-00003-HSG, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017)..............................13

25

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) .............................................................................................7

26
27

*Cross v. Facebook, Inc.*,
  14 Cal. App. 5th 190 (2017) ...............................................................................................23

28

*Cullen v. Netflix, Inc.*,
  880 F. Supp. 2d 1017 ...........................................................................................................19

iii

*Cutler v. Rancher Energy Corp.*,
  No. CV 13–00906 DOC, 2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) ................................16

*Damner v. Facebook, Inc.*,
  2020 WL 7862706 (N.D. Cal. 2020) ..........................................................................6, 12, 16

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ..................................................................................18

*Ebeid v. Facebook, Inc.*,
  2019 WL 2059662 (N.D. Cal. May 9, 2019) ..................................................7, 11, 12, 23

*Env't Furniture, Inc. v. Bina*,
  2010 WL 5060381 (C.D. Cal. Dec. 6, 2010) ................................................................11

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ..................................................................................24

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) ....................................................................................12

*Fed. Agency of News LLC v. Facebook, Inc.*,
  395 F. Supp. 3d 1295 ..............................................................................................23

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 ..............................................................................................23

*Fields v. Twitter, Inc.*,
  200 F. Supp. 3d 964 (N.D. Cal. 2016) ......................................................................22

*Fields v. Twitter, Inc.*,
  217 F. Supp. 3d 1116 (N.D. Cal. 2016) ....................................................................25

*I.B. ex rel. Fife v. Facebook, Inc.*,
  905 F. Supp. 2d 989 (N.D. Cal. 2012) ..................................................................16, 17

*Finton Construction, Inc. v. Bidna & Keys, APLC*,
  238 Cal. App. 4th 200 (2015) ..................................................................................20

*Flores v. American Seafoods Co.*,
  335 F.3d 904 (9th Cir. 2003) ......................................................................................7

*Garcia v. Sony Computer Entm't Am, LLC*,
  859 F. Supp. 2d 1056 (N.D. Cal. 2012) ....................................................................17

*Gentec Enterprises, Inc. v. Transistor Devices, Inc.*,
  2011 WL 13217662 (C.D. Cal. Dec. 9, 2011) ............................................................14

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................................24, 25

*Golden Gate Way, LLC v. Enercon, Inc.*,
  2021 WL 5407517, at *7 (N.D. Cal. Nov. 18, 2021)......................................................9

*Gray v. Preferred Bank*,
  2010 WL 11508777 (S.D. Cal. June 10, 2020)............................................................12

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 ..................................................................................................19

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........................................................................14

*Herskowitz v. Apple, Inc.*,
    940 F.Supp.2d 1131 (N.D. Cal. 2013) ..........................................................................14

*Jurin v. Google, Inc.*,
    695 F. Supp. 2d 1117 (E.D. Cal. 2010)..........................................................................24

*King v. Facebook Inc.*,
    2022 WL 1188873 (N.D. Cal. April 20, 2022)..............................................8, 9, 10

*King v. Facebook, Inc.*,
    No. 19-CV-1987, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) .....................22, 24, 25

*King v. Facebook, Inc.*,
    No. 3:21-cv-04573-EMC, 2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) ........................21, 25

*Kumandan v. Google LLC*,
    No. 19-cv-04286, 2022 U.S. Dist. LEXIS 5658 (N.D. Cal. Jan. 11, 2022)...........................13

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016)........................................................23, 24

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .......................................................................................5

*Lewis v. Google LLC,*
    461 F. Supp. 3d at 954 ................................................................................................23

*Lopez v. Smith*,
    203 F.3d 1122, 1127 (9th Cir. 2000) ...........................................................................25

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................20

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) .......................................................................................18

*Lundy v. Facebook Inc.*,
    2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ...........................................................11

*Mattocks v. Black Entertainment Television LLC*,
    43 F. Supp. 1311 (S.D. Fla. 2014) ..............................................................................21

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
    2007 WL 2206946 (S.D. Cal. July 27, 2007) .............................................................14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) .....................................................................................5

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th.........................................................................................................24

*Parts.com, LLC v. Yahoo! Inc.*,
    996 F. Supp. 2d 933 (S.D. Cal. 2013)......................................................................23

*Perfect 10, Inc. v. CCBill LLC*,
    481 F.3d 751 (9th Cir. 2007), *opinion amended and superseded on denial of
    reh'g*, 488 F.3d 1102 (9th Cir. 2007)......................................................................22

*Pirozzi v. Apple, Inc.*,
    966 F. Supp. 2d 909 (N.D. Cal. 2013) ....................................................................15

*Price v. Apple*,
    No. 21-cv-02846-HSG, 2022 WL 1032472 (N.D. Cal. April 6, 2022) ..............17, 19

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ..................................................................18

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125,1135 (2020) ........................................................................16

*Signal Hill Service, Inc. v. Macquarie Bank Ltd.*,
    2013 WL 12244056 (C.D. Cal. June 12, 2013) ......................................................13

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) .............................................................22, 23

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    697 F. App'x 526 (9th Cir. 2017) ............................................................................24

*Singh v. Google Inc.*,
    No. 16-cv-03734, 2017 WL 2404986 (N.D. Cal. June 2, 2017)..............................17

*Smith v. LG Electronics U.S.A., Inc.*,
    2014 WL 989742 (N.D. Cal. March 11, 2014) .......................................................18

*Spates v. Dameron Hosp. Assn.*,
    114 Cal. App. 4th 208 (2003) ..................................................................................20

*Spy Dialer, Inc. v. Reya LLC*,
    2019 WL 1873296 (C.D. Cal. March 18, 2019) .....................................................21

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...................................................................................5

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
    100 Cal. App. 4th 44 (2002) ....................................................................................12

*Sunnyside Development Co., LLC v. Opsys Limited*,
    No. 05-553, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) ......................................14

*Tavernier v. Maes*,
    242 Cal. App. 2d 532 (1966) ...................................................................................21

*Taylor v. Google LLC*,
    2021 WL 4503495 (N.D. Cal. Oct. 1, 2021).........................................................20

*Terteryan v. Medical Depot, Inc.*,
  2017 WL 5665006 (C.D. Cal. May 18, 2017) .........................................................................17

*Tryfonas v. Splunk, Inc.*,
  No. 17-CV-01420-HSG, 2018 WL 534287 (N.D. Cal. Jan. 24, 2018)....................................11

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ....................................................................................................7

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
  117 F. Supp. 3d 1092 .............................................................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................................................................12

*Videtto v. Kellogg USA*,
  No. 2:08–cv–01324–MCE–DAD, 2009 WL 1439086 (E.D. Cal. May 21,
  2009) ......................................................................................................................................12

*Vu v. California Com. Club, Inc.*,
  58 Cal. App. 4th 229 (1997) .....................................................................................................8

*Wells Fargo Bank, N.A. v. FSI Fin. Sols., Inc.*,
  196 Cal. App. 4th 1559 (2011) .........................................................................................15, 16

*Young v. Facebook*,
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..............................................................................6, 10

*Zimmerman v. Facebook, Inc.*,
  2020 WL 58778363 (N.D. Cal. Oct. 2, 2020)......................................................................22, 25

**Statutes**

47 U.S.C. § 230.................................................................................................... *passim*

47 U.S.C. § 230(c)(1)........................................................................................... *passim*

47 U.S.C. § 230(f)(2)...................................................................................................23

Bus. & Prof. Code § 17200 ................................................................................. *passim*

Communications Decency Act § 230 ...............................................................22, 23, 24, 25

Fed. R. Civ. Proc. 9(b) ........................................................................................ *passim*

Fed. R. Civ. Proc. 12(b)(6) ..........................................................................................5

## <u>NOTICE OF MOTION AND RELIEF SOUGHT</u>

PLEASE TAKE NOTICE that on July 13, 2022, at 1:30 PM, or as soon thereafter as may be heard by the Honorable Judge Richard Seeborg, United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. will and hereby does move to dismiss Plaintiff's Complaint on the grounds that Plaintiff fails to state a claim upon which relief can be granted and Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated:  June 8, 2022

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  */s/ Jacob M. Heath*

JACOB M. HEATH

Attorney for Defendant
META PLATFORMS, INC.

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3

4

5

6

7

8

9

10

11

12

13

14

     Plaintiff Shared.com ("Plaintiff") has sued Meta Platforms, Inc., asserting claims for conversion; violations of California's Unfair Competition law ("UCL"), Bus. & Prof. Code § 17200; breach of contract; breach of the implied covenant of good faith and fair dealing; and intentional and negligent misrepresentation.  Plaintiff's claims arise from its purported use of Meta's advertising services on the Facebook platform through October 2020, when Meta disabled Plaintiff's Facebook pages.  While Plaintiff attempts to repackage its allegations into various causes of action, each of Plaintiff's claims are premised on Meta's alleged failure to comply with three purported contractual obligations: (1) to provide "advanced notice" that it was disabling Plaintiff's access to the Instant Articles monetization feature, (2) to give Plaintiff "sufficient" instructions on how to bring rejected, non-compliant ads into compliance, and (3) to pay Plaintiff on an agreed-upon payment schedule.  As established herein, Plaintiff's Complaint fails to assert any viable cause of action.

15

16

17

18

19

     *First*, Plaintiff's contract-based claims—*i.e.*, its third cause of action for breach of contract and its fourth cause of action for breach of the implied covenant of good faith and fair dealing—seek to hold Meta liable for alleged obligations that simply do not exist, or that contradict, the parties' agreements.  Moreover, Plaintiff fails to causally tie the alleged breaches to any of the alleged damages Plaintiff purportedly suffered.

20

21

22

23

24

     *Second*, Plaintiff's fraud-based claims—*i.e.*, its second cause of action for violations of the UCL and its fifth and sixth cause of action for intentional and negligent misrepresentation, respectively—all fail to allege the necessary elements to state a claim, especially under the heightened pleading standard of Rule 9(b).  Crucially, Plaintiff does not allege facts to support that Meta made a single false statement.  This is fatal to Plaintiff's fraud-based claims.

25

26

27

28

     *Third*, Plaintiff's conversion claim—its first cause of action, which is based on a purported property interest in Plaintiff's Facebook followers—fails because it seeks to hold Meta liable for alleged activity—*i.e.*, disabling Plaintiff's accounts—to which Plaintiff agreed when using Meta's self-serve advertising and Audience Network services.

*Finally,* each of Plaintiff's claims are barred by Section 230 of the Communications Decency Act ("CDA"), which immunizes interactive service providers like Meta from claims based on removal of user content or users from its platform.  47 U.S.C. § 230.  The Complaint on its face satisfies all the requirements for Section 230(c)(1) protection.

For these reasons, this Court should dismiss Plaintiff's entire Complaint with prejudice.

## II.    BACKGROUND

Defendant Meta Platforms, Inc.[1] (f/k/a Facebook, Inc.) ("Meta") and its Facebook platform ("Facebook") help give people the power to build community and bring the word closer together.  Meta also provides advertising services to businesses including both "self-serve advertising" and the use of its Instant Articles monetization feature ("Instant Articles").[2] Complaint ("Compl.") ¶¶ 14-16.  Meta's relationship with the people who use its services— including Plaintiff—is governed overall by its Terms of Service, to which all users agree in order to create a Facebook account and use Meta's advertising services.  Declaration of Jacob M. Heath ISO Meta's Request for Judicial Notice, Ex. A.

Plaintiff claims to be a Canadian company, owned by James Walker and Jordan Nabigon, that purports to publish "original content."  *Id.* ¶¶ 6, 9-10.  Plaintiff claims that it has had a "business relationship" with Meta since 2008 when it began advertising through Meta's self-serve advertising product.  *Id.* ¶ 8.  Plaintiff also claims to have had at least five "webpages" on Facebook since 2006 ("Plaintiff's Webpages").  *Id.* ¶ 9.  Plaintiff claims that it had 25,000,000 Facebook "followers" before it was removed from "the Facebook ecosystem" in 2020.  *Id.* ¶ 12.

A year and a half after being removed from Facebook, on April 15, 2022, Plaintiff sued Meta asserting claims for conversion, violations of the UCL, breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional and negligent misrepresentation. The crux of Plaintiff's Complaint is the allegation that Meta wrongfully disabled Plaintiff's Webpages and, as a result, Plaintiff purportedly suffered damages.

---

[1] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.

[2] The advertising services referenced in the Complaint were formerly run by Facebook, Inc.  As such, some of the cited agreements reference "Facebook" as a party to the agreement, which is called Meta in the current versions of those agreements.

1    Plaintiff alleges it availed itself of two of Meta's advertising services.  The first is Meta's

2    self-serve advertising, which allows users to purchase ads that Meta then places on Facebook if

3    the ads complied with applicable laws, regulations, guidelines, and policies.  *Id.* ¶¶ 14-15.

4    Plaintiff alleges that Meta's Advertising Policies govern Plaintiff's use of Meta's self-serve

5    advertising feature (Compl. ¶ 15), and that pursuant to those policies, Meta can ***reject or remove***

6    ***ads for any reason in its sole discretion***.  *See Id.*; *see also* Plaintiff Exhibit 3 ("Pl. Ex. 3")

7    (emphasis added).  Plaintiff alleges that the Advertising Policies required Meta to "explain the

8    basis for its decision to reject an ad as allegedly not complying with its Advertising Policies along

9    with an explanation sufficient for Shared to bring an allegedly non-compliant ad into

10   compliance."  Compl. ¶ 38.  Plaintiff also claims that Meta rejected "numerous ads" without

11   "sufficient detail to allow Shared to bring allegedly non-compliant ads into compliance."  Compl.

12   ¶ 40.  Plaintiff does not allege how many of its ads were rejected, whether it attempted to edit its

13   non-compliant ads, or if it ever employed Meta's appeal process.

14        The second is Meta's Instant Articles monetization feature of Meta's Audience Network.

15   *Id.* ¶ 14.  Plaintiff claims that the Facebook Audience Network ("FAN") Terms governed its use

16   of Instant Articles.  *See Id.* ¶ 15; *see also* Plaintiff Exhibit 5 ("Pl. Ex. 5"), Section 1.  According

17   to Plaintiff, using Instant Articles, Meta would "place ads from businesses other than Shared

18   within Shared's article," then pay Plaintiff a portion of Meta's advertising revenue generated

19   from those ads."  Compl. ¶¶ 16-17.  The FAN Terms allow Meta to "change, withdraw, or

20   discontinue the Audience Network Service ***in its sole*** discretion" and state that Meta will use

21   "good faith efforts to provide Publisher with notice of the same."  Pl. Ex. 5, Section 2 (emphasis

22   added).  The FAN Terms also state that Meta will pay users revenue approximately 21 days

23   following the end of the calendar month in which a specific transaction occurred.  Pl. Ex. 5,

24   Section 4.  Plaintiff alleges that it lost access to Instant Articles monetization on three separate

25   occasions—April 24, 2018, September 20, 2018, and November 29, 2018—without any

26   "advanced notice" from Meta.  Compl. ¶¶ 22-33.  Plaintiff also claims that Meta made a single

27   payment late, leaving Plaintiff with "no choice but to lay off 18 people."  *Id.* ¶ 23.

28        Plaintiff further alleges that on October 26, 2020, Meta "unpublished" Plaintiff's

Webpages, suspended its ability to advertise on Facebook, disabled Mr. Nabigon's personal profile, and suspended the personal accounts of other Shared personnel. *Id.* ¶ 35. Plaintiff claims that Meta's alleged conduct—*i.e.*, Meta's termination of Plaintiff's Webpages, Meta's failure to provide "advanced notice" that it was disabling Plaintiff's access to Instant Articles, and Meta's failure to fully explain why it was rejecting some of Plaintiff's ads—caused its business to lose the "$35,000,000 valuation it once enjoyed." *Id.* ¶ 43.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In conducting a Rule 12(b)(6) analysis, the court may consider the complaint, material relied upon in the complaint, and material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The court must accept "well-pleaded factual allegations" as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 664, 678; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

## IV.   ARGUMENT

### A.   The Complaint Fails To State Any Cause Of Action Against Defendant.

Each of Plaintiff's claims is fatally deficient on the face of the pleadings and should be dismissed for failure to state a claim for relief pursuant to Rule 12(b)(6).

#### 1.   Plaintiff fails to state a claim for breach of contract.

Under California law, to plead a claim for breach of contract, a plaintiff must allege: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010). Plaintiff has failed to plead a breach of

either contract at issue—the FAN Terms and the Advertising Policies.

### a.   Plaintiff has failed to plead a claim for breach of the FAN Terms.

Plaintiff's claim for breach of the FAN Terms fails for four independent reasons.

*First,* Plaintiff has failed to identify an actual contractual provision that creates the obligations that Plaintiff claims Meta breached.  It is well-settled that to properly plead breach of contract, Plaintiff must "point to a[] specific provision that was breached."  *Damner v. Facebook, Inc.*, 2020 WL 7862706, at *7 (N.D. Cal. 2020) (finding provision in Facebook's terms could not support plaintiff's breach claim because plaintiff had misstated the provision, and therefore the alleged promise did not appear in the terms to support breach); *Young v. Facebook,* 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (noting plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached).

Here, Plaintiff's claim for breach of the FAN Terms arises from two alleged contractual provisions that require Meta (1) to provide "advanced notice" that it was disabling Plaintiff's access to the Instant Articles monetization feature (*see* Compl. ¶¶ 62-75) and (2) to make payments within the "contractually required payment schedule" (*see* Compl. ¶ 72).  But Plaintiff has misquoted both contractual provisions.  Crucially, as to the purported "advanced notice" requirement, the word "advanced" does not appear in the FAN Terms.  Rather, the FAN Terms simply mention "notice" and make no mention of whether it needs to precede disablement:

> Publisher (a) understands and agrees that FB may change, withdraw, or discontinue the Audience Network Service in its sole discretion and FB will use good faith efforts to provide Publisher with *notice* of the same.  *See* Pl. Ex. 5, Section 2 (emphasis added). [3]

---

[3] Plaintiff attaches four agreements to the Complaint: the FAN Terms (Pl. Ex. 5), the Self-Serve Ad Terms (Pl. Ex. 3), the Advertising Policies (Pl. Ex. 4), and the Commercial Terms (Pl. Exs. 1 and 2).  The Complaint references these agreements and relies on them to support Plaintiff's claims. *See, e.g.*, Compl. ¶¶ 65-66.  The FAN Terms, which contradict Plaintiff's facts as alleged, along with the other cited agreements, thus "form[] the basis of the plaintiff's claim." *U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003).  Accordingly, they are "considered part of the pleading." *Id.*; *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 n.1 (N.D. Cal. 2019) (granting Facebook's request to incorporate by reference the Terms of Service because the consolidated complaint relied upon them to allege the breach of contract claims and statutory claims); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (finding the Court may consider not only documents attached to the complained, but also documents whose contents are alleged in the complaint, and the document's relevance is uncontested).

And, as for the purported requirement that Meta make payments within a "contractually required payment schedule," Plaintiff again mischaracterizes the contractual language, which—in reality—says Meta will make payments "*approximately* 21 days following the end of the calendar month in which the transaction occurred." Pl. Ex. 5 (emphasis added). Plaintiff omits "approximately" completely out of the contract term, thus changing its meaning. *See Flores v. American Seafoods Co*., 335 F.3d 904, 912 (9th Cir. 2003) (rejecting defendant's interpretation because reading "would involve considerable revision of the language in the contract, requiring [court] to remove some words and to add others that contradict the terms of the agreement"). Simply put, Plaintiff's alleged breaches are not based on actual provisions in the FAN Terms and Plaintiff cannot base its breach of contract claim on promises that do not exist. *See, e.g.*, *Ebeid*, 2019 WL 2059662, at *7 (dismissing plaintiff's breach of contract claim where plaintiff failed to allege the provisions in the contract creating the obligation that Facebook was said to have breached). This alone is fatal to Plaintiff's breach of contract claim.

*Second*, Plaintiff fails to allege that Meta breached the actual provisions of the FAN Terms. As to notice, the FAN Terms state that Meta will use "good faith efforts to provide Publisher with *notice*" when it changes, withdraws, or discontinues the Audience Network Service. Pl. Ex. 5, Section 2. By Plaintiff's own admission, Meta *did* provide notice that it had disabled Plaintiff's access to Instant Articles on multiple occasions, just not "advanced notice." *See, e.g.*, Compl. ¶ 25 ("…a Facebook representative informed Shared that Facebook's development team had found a 'bug' that allegedly caused Shared to lose its ability to use the Instant Articles monetization feature of the Facebook Audience Network"); *Id.* ¶ ("On October 10, 2018, Shared heard from its Facebook representative…"); *Id.* ¶¶ 22, 28, 32 (alleging Meta failed to provide "advanced notice" rather than general notice); *Id.* ¶ 90 ("Had Shared received *timely* notice…"). Likewise, as to payment, the FAN Terms state that Meta would pay "*approximately* 21 days following the end of the calendar month in which the transaction occurred." Pl. Ex. 5, Section 2. Plaintiff alleges that Meta made one "delayed payment." But Plaintiff does not allege when the payment was supposedly due and does not explain how Meta's eventual payment was not approximately within the 21-day payment window. Compl. ¶ 23.

1    Thus, Plaintiff's own allegations contradict his claim that Meta breached the payment obligation

2    in the FAN Terms.

3            *Third*, Plaintiff fails to adequately allege that Meta's alleged breaches of the FAN Terms

4    are the proximate cause of Plaintiff's damages.  To support a breach of contract claim, Plaintiff

5    must allege damages were "proximately caused" by Meta's alleged breach.  *Vu v. California*

6    *Com. Club, Inc.*, 58 Cal. App. 4th 229, 233 (1997).  Plaintiff asserts that it was no longer able to

7    generate revenue once it lost access to the Instant Articles feature (*see* Compl. ¶ 66) but fails to

8    allege any facts explaining how its lost revenue was tied to Meta's failure to provide Plaintiff

9    with notice.  *See King v. Facebook Inc.*, 2022 WL 1188873, at *4 (N.D. Cal. April 20, 2022)

10   (finding Plaintiff failed to show destruction of her content was casually related to Facebook's

11   failure to provide a sufficient explanation of why her account was disabled); *Vu*, 58 Cal. App. 4th

12   at 233 (dismissing gambler's claim against casino because the alleged damages—gambling

13   losses—were not necessarily caused by the casino's breach of its "implied promise[] of security

14   from cheating," as opposed to other factors like skill or luck).  On the contrary, Plaintiff

15   acknowledges that its purported damages—failure to generate revenue—were caused by the fact

16   that Meta disabled its access to Instant Articles, something Plaintiff agrees Meta is expressly

17   authorized to do under the FAN Terms.  Compl. ¶ 66 ("When [Shared lost ad monetization within

18   the Instant Articles feature], Shared was no longer able to generate revenue through the Instant

19   Articles feature."); Pl. Ex. 5 ("FB may change, withdraw, or discontinue the Audience Network

20   Service in its sole discretion…).  Moreover, Plaintiff fails to plead any facts establishing that

21   Meta's failure to make a single payment on time caused its purported damages.  Even if Meta had

22   breached the payment provision, Plaintiff fails to explain how this single instance of alleged

23   tardiness somehow left Shared "with no choice but to lay off 18 people on July 13, 2018."

24   Compl. ¶ 74.

25           *Fourth*, to the extent that Plaintiff is seeking damages for having to terminate its

26   employees, *see* Compl. ¶ 74, those are consequential damages, which Plaintiff is not entitled to

27   under the Terms of Service that govern Plaintiff's relationship with Meta.  Heath Decl. ISO

28   Meta's Request for Judicial Notice, Ex. A ("under no circumstance will we be liable to you for

DEFENDANT'S MOTION TO DISMISS
Case No. 3:22-cv-02366-RS

any…consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Facebook Products"); *see Golden Gate Way, LLC v. Enercon, Inc.*, 2021 WL 5407517, at *7 (N.D. Cal. Nov. 18, 2021) ("[l]imitation of liability clause have long been recognized as valid under California law"); *see, e.g.*, *Adkins v. Facebook, Inc.*, 2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019) (enforcing Meta's limitation of liability clause); *King v. Facebook, Inc.*, 2022 WL 1188873, at *6 (N.D. Cal. April 20, 2022) (finding Meta's limitation of liability provision expressly barred plaintiff's claim for special damages).  Accordingly, because the limitation of liability provision expressly bars Plaintiff's claim for consequential damages, Plaintiff's purported damages for breach of the payment term are not recoverable.

### b.  Plaintiff has failed to plead a claim for breach of the Advertising Policies.

Plaintiff's claim for breach of the Advertising Policies also fails for three reasons.

*First,* Plaintiff bases its breach on a provision that does not appear in the contract as alleged.  Plaintiff claims Meta breached a provision requiring Meta to provide a "promised explanation with information that would allow Shared to address a purported deficiency in an allegedly non-compliant ad."  Compl. ¶ 69.  But the Advertising Policies do not state that Meta will provide explanations with "sufficient detail" to bring its ads into compliance.  *See* Pl. Ex. 4; Compl. ¶ 68.  The Advertising Policies provide users with instructions that can assist them in editing their ads, explaining that "if your ad doesn't get approved, we'll send you an email with *details that explain why*," and using that information, "*you can edit your ad* and create a compliant one."  Pl. Ex. 4 (emphasis added).  The Advertising Policies do not promise that Meta will provide the "reasons for rejections with *sufficient detail*[4]  to necessarily instruct Shared on how to bring the allegedly non-compliant ads into compliance."  Compl. ¶ 40 (emphasis added). Thus, this alleged obligation cannot form the basis of Plaintiff's breach claim.  *Young*, 790 F. Supp. 2d at 1117 (finding no provision of the terms prohibited Facebook from terminating an account in the manner alleged).

---

[4] Plaintiff repeatedly states that Meta was obligated to provide it with sufficient instructions to fix its non-compliant ads. *See, e.g.*, Compl. ¶¶ 38-40.  This is not an obligation under the Advertising Policies, and Plaintiff's own term—"sufficient"— is both vague and subjective in and of itself.

9

*Second*, to the extent the Advertising Policies require Meta to provide details on why Plaintiff's ads were rejected, by Plaintiff's own allegations, Meta *did* provide such an explanation (*see* Compl. ¶ 40).  According to Plaintiff, Meta provided Plaintiff with an explanation that allowed Plaintiff to "click the ad name below to see why it wasn't approved," and directed Plaintiff to the Adverting Policies, which include *fifteen pages* of detail of what can and cannot be included in ads, along with an opportunity to "request review of the [rejection]" and appeal the decision.  *See* Pl. Ex. 4.  Plaintiff has not alleged any facts that establish how Meta's purported response was not consistent with the Advertising Policies requirement that Meta "explain why" the ad was rejected.

*Third*, Plaintiff has failed to plead any facts establishing that the alleged breach of the Advertising Policies proximately caused Plaintiff's damages.  *King* is particularly instructive here.  In *King*, the court held that Plaintiff failed to show how her damages—the destruction of her Facebook photos—were "causally related to the alleged breach of the failure to provide an explanation why her account was disabled," especially because the parties' agreement authorized Meta to disable her account.  2022 WL 1188873, at *4.  Here, like in *King*, Plaintiff does not explain how Meta's alleged failure to provide explanations on why it rejected Plaintiff's ads caused Plaintiff's lost revenue, especially given that the Advertising Policies grant Meta sole discretion over ad acceptance and rejection.  Pl. Ex. 4 ("[Meta] reserve[s] the right to reject, approve or remove any ad for any reason, in [Meta's] sole discretion.").[5]

### 2.   Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing.

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted ... by a conscious and deliberate act."  *Ebied*, 2019 WL 2059662, at *8.  "California law requires that a claim for breach of the implied covenant of good faith and fair

---

[5] Notably, Plaintiff fails to assert whether it even attempted to bring its rejected ads into compliance or use Meta's appeals process.  Pl. Ex. 4 ("If you can't edit your ad or feel it was a mistake that it wasn't approved, you can request a review of the decision in Account Quality.").

dealing 'go beyond the statement of a mere contract breach' and not 'rel[y] on the same alleged acts [or] simply seek the same damages or other relief already claimed in a companion contract cause of action.'"  *Env't Furniture, Inc. v. Bina*, 2010 WL 5060381, at *3 (C.D. Cal. Dec. 6, 2010); *Tryfonas v. Splunk, Inc.*, No. 17-CV-01420-HSG, 2018 WL 534287, at *2 (N.D. Cal. Jan. 24, 2018) (dismissing implied covenant claim as superfluous to breach of contract claim where based on the same contentions).

For both the FAN Terms and the Advertising Policies, because Plaintiff's implied covenant claim does not go beyond the alleged contractual breaches detailed above, it should be dismissed as superfluous.  *See* Compl. ¶¶ 76-82 (basing implied covenant claim on Meta's alleged failure to provide advanced notice and sufficient explanations to cure non-compliant ads); *see, e.g.*, *Lundy v. Facebook Inc.*, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021) (dismissing implied covenant claim as superfluous to breach of contract claim where it was based on the same alleged breach).

To the extent Plaintiff bases its implied covenant claim on an implicit obligation for Meta to provide "prior notice" and an "opportunity to cure" before terminating Plaintiff's Webpages, the claim still fails because Meta was contractually permitted to terminate the Webpages in its sole discretion and without notice.  Compl. ¶ 79; *see, e.g.*, Pl. Ex. 3 ("failure to comply may result in a variety of consequences, including the cancellation of ads you have placed and *termination of your account*…we may reject or remove any ad for any reason") (emphasis added).  If a defendant's actions are "expressly authorized" by contract, there can be no breach of the implied covenant.  *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 56–57 (2002); *Ebied*, 2019 WL 2059662, at *8 (dismissing implied covenant claim where Facebook had contractual right to remove or disapprove any post or ad at Facebook's sole discretion); *Damner*, 2020 WL 7862706, at *7 (dismissing implied covenant claim where it sought to impose substantive duty to keep "keep Facebook safe" that was not found in the underlying contract). Because Meta had the contractual right to remove users from its platform for any reason, Plaintiff's implied covenant claim must also be dismissed with prejudice.

### 3.   Plaintiff fails to state a claim for intentional misrepresentation.

"Under California [l]aw, '[t]he elements of intentional misrepresentation, or actual fraud, are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" *Videtto v. Kellogg USA*, No. 2:08–cv–01324–MCE–DAD, 2009 WL 1439086, *3 (E.D. Cal. May 21, 2009) (quoting *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997)).  Claims sounding in fraud are subject to the "heightened pleading standards of Rule 9(b)." *Gray v. Preferred Bank*, 2010 WL 11508777, at *3 (S.D. Cal. June 10, 2020).  A pleading will be "sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir. 1995).  Thus, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  Plaintiff's claim for intentional misrepresentation fails for four reasons.

*First*, Plaintiff has not alleged any facts supporting that Meta's representations were false at the time they were made.  The only alleged false statements Plaintiff identifies are purported provisions in the FAN Terms and the Advertising Policies—specifically that: (1) Meta would use "good faith efforts" to notify Plaintiff when it suspended Plaintiff's ability to use Instant Articles, and (2) Meta would provide an explanation for rejecting Plaintiff's ads to enable the advertiser to bring those ads into compliance with the Advertising Polices.  *See* Compl. ¶¶ 83-97.

However, Plaintiff does not allege any facts establishing how these contractual provisions were false at the time they were made, as is required to plead an intentional misrepresentation claim.  *See, e.g.*, *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *8 (N.D. Cal. July 13, 2018) (finding fraud claim failed because plaintiffs did not allege that Google's representations concerning refund agreement were false when made).  For both misrepresentations, Plaintiff merely asserts that "Facebook knew the representation was false when Facebook made it." Compl. ¶¶ 87, 93.  This is wholly insufficient under the heightened pleading standards of Rule 9(b).  *See, e.g.*, *Kumandan v. Google LLC*, No. 19-cv-04286, 2022 U.S. Dist. LEXIS 5658 *33-34

12

(N.D. Cal. Jan. 11, 2022) (dismissing fraud claims relating to software bug where plaintiff failed to plead facts supporting that statements in Google's terms were false when made, especially because at the time the agreements were made, Google could not have had knowledge of the bug at issue); *Carter v. Rasier-CA, LLC*, No. 17-cv-00003-HSG, 2017 WL 4098858, at *4 (N.D. Cal. Sept. 15, 2017) (dismissing fraud claim where fact that plaintiff encountered issues accessing Uber app did not render statement about driver's ability to "work when you want or need to work" false when Uber made it).

In fact, Plaintiff's own allegations demonstrate that these statements were not false at the time they were made because Plaintiff admits that Meta complied with these purported promises. As established above (*see* Section V.A.1.a, *supra*), Plaintiff acknowledges that it received notice that Meta had disabled its access to Instant Articles (*see* Pl. Ex. 5, Section 2; *see, e.g.*, Compl. ¶¶ 25, 90) and that it received details explaining why its ads were rejected (*see* Compl. ¶ 40).  These allegations negate the falsity of the two alleged misrepresentations.  This reason alone requires that Plaintiff's claim be dismissed.  *Signal Hill Service, Inc. v. Macquarie Bank Ltd*., 2013 WL 12244056, at *12 (C.D. Cal. June 12, 2013) (dismissing fraud claim because defendant's statement relating to loan transaction was true and thus "could not form the basis for a claim for fraud").

*Second*, Plaintiff fails to allege that Meta had the requisite knowledge or intent to defraud. To support a fraud claim based on contractual misrepresentations, "a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation."  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions,* LLC, 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007); *Sunnyside Development Co., LLC v. Opsys Limited*, No. 05-553, 2005 WL 1876106, at *5-6 (N.D. Cal. Aug. 8, 2005) ("[T]he mere fact that a party breaches a promise to perform a condition of contract is as a matter of law insufficient to give rise to an inference that the breaching party acted with fraudulent intent at the time that the promise was made").

Here, Plaintiff fails to allege *a single fact* establishing that Meta intended to defraud Plaintiff with its statements in the FAN Terms and Advertising Policies.  Plaintiff's conclusory recitation of the claim's elements—*e.g.*, simply alleging that that Meta "knew" both "intentional

1    misrepresentation[s]" were "false when Facebook made" them (*see* Compl. ¶¶ 87, 93)—is wholly

2    insufficient to state a claim for fraud under Rule 9(b).  *See Gentec Enterprises, Inc. v. Transistor*

3    *Devices*, Inc., 2011 WL 13217662 *10 (C.D. Cal. Dec. 9, 2011) ("to make out a fraud claim,

4    "something more than nonperformance is required to prove the defendant's intent not to perform

5    his promise"); *Herskowitz v. Apple, Inc*., 940 F.Supp.2d 1131, 1147 (N.D. Cal. 2013) (dismissing

6    intentional misrepresentation claim where conclusory statement that Apple intended to mislead

7    Plaintiff with representations about products provided no basis to infer that Apple made any

8    statement with the intent to defraud).

9        *Third*, Plaintiff fails to adequately plead that it *reasonably relied* on either alleged

10   misrepresentation.  As established above (*see* Section V.A.1, *supra*), Plaintiff misstates what

11   alleged promises Meta made in the FAN Terms and Advertising Policies.  Crucially, the FAN

12   Terms do not require "advance" notice; nor do the Advertising Policies require an explanation

13   sufficient to enable Shared to create compliant ads.  Compl. ¶¶ 86, 91.  Accordingly, Plaintiff

14   could not have *reasonably relied* on promises that Meta would give it "advanced notice" or would

15   provide explanations sufficient "to enable [Plaintiff] to create a compliant ad," because Meta did

16   not make these promises.  Compl. ¶ 89; *see, e.g.*, *Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182,

17   1194 (N.D. Cal. 2020) (finding bare allegations of reasonable reliance on Facebook's privacy

18   policies were insufficient, especially Plaintiff "failed to explain how their continued use of

19   Facebook even after discovery of this issue [did] not defeat any alleged reliance on their part").

20       *Fourth*, Plaintiff fails to plead how its damages were caused by either alleged

21   misrepresentation.  Although Plaintiff claims that it was "harmed by Facebook's intentional

22   misrepresentation" that it would give Plaintiff "timely notice" that it was disabling Plaintiff's

23   access to Instant Articles, it fails to explain how this harm resulted from the alleged

24   misrepresentation.  *See* Compl. ¶¶ 90, 96.  Crucially, Plaintiff fails to allege facts supporting that

25   its damages were caused by lack of notice, rather than the fact that Meta disabled its access to

26   Instant Articles, something Plaintiff acknowledges Meta is expressly authorized to do under the

27   FAN Terms.  *See* Pl. Ex. 5, Section 2 ("FB may change, withdraw, or discontinue the Audience

28   Network Service in its sole discretion…).  Nor does Plaintiff explain how its damages were

caused by Meta's alleged failure to provide details on why Plaintiff's ads were rejected, as opposed to the fact that the ads were rejected in the first place, which Meta also had express authority to do.  *See* Pl. Ex. 4 ("We reserve the right to reject, approve or remove any ad for any reason, in our sole discretion…").

For these reasons, Plaintiff's claim for intentional misrepresentation must be dismissed with prejudice.

### 4.     Plaintiff fails to state a claim for negligent misrepresentation.

Under California law, the elements of negligent misrepresentation are "(1) misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and (2) with intent to induce another's reliance on the fact misrepresented; (3) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and (4) resulting damage." *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 924 (N.D. Cal. 2013). The elements for negligent misrepresentation are thus the same as intentional misrepresentation, "except there is no requirement of knowledge of falsity, instead, there must be no reasonable ground for believing the misrepresentation to be true." *Wells Fargo Bank, N.A. v. FSI Fin. Sols.*, Inc., 196 Cal. App. 4th 1559, 1573 (2011).  Claims for negligent misrepresentation also "must meet the heightened pleading requirements of Rule 9(b)." *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1106 (dismissing negligent misrepresentation claim because plaintiff failed to plead why promises were false when made).

As established above (*see* Section V.A.3, *supra*), Plaintiff has not alleged facts that show that Meta made any false statements.  *See Damner*, 2020 WL 7862706 *8 (dismissing negligent misrepresentation claim against Facebook where Plaintiff failed to plead any false statements related to Facebook's commitment to protect privacy).  By all accounts, Plaintiff alleges that Meta complied with its purported promises.  As established above (*see* Section V.A.1.a, *supra*), Plaintiff acknowledges that it received notice that Meta had disabled its access to Instant Articles (*see* Pl. Ex. 5, Section 2; Compl. ¶¶ 25, 90) and that it received details explaining why its ads were rejected (*see* Compl. ¶ 40).  However, even if Meta had made a false statement (it did not), Plaintiff's conclusory assertion that Meta "had no reasonable grounds for believing" its

representations were true is insufficient to support a claim for negligent misrepresentation. *Wells Fargo Bank, N.A.*, 196 Cal. App. 4th at 1573 (dismissing negligent misrepresentation claim under Rule 9(b) where counterclaimants pled 'no facts supporting [] bare allegation that plaintiffs 'had no reasonable grounds for believing that [their] representations [concerning intent to perform] were true when made.'"); *Cutler v. Rancher Energy Corp.*, No. CV 13–00906 DOC, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014) ("There must be some showing that the speaker's belief was unreasonable."). Accordingly, Plaintiff's negligent misrepresentation claim must also be dismissed with prejudice.

### 5.   <u>Plaintiff fails to state a claim under the UCL.</u>

The UCL bars any "business act or practice" that is (1) "fraudulent," (2) "unlawful," or (3) "unfair." Bus. & Prof. Code § 17200; *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020). Plaintiff does not assert that Meta's business practices are unlawful, and it fails to state a claim that Meta's business practices are either fraudulent or unfair. *See* Compl. ¶ 52-61.

### a.   <u>Plaintiff fails to allege a fraudulent business practice under the UCL.</u>

"Conduct is 'fraudulent' under the UCL if the conduct is 'likely to deceive as "governed by the 'reasonable consumer' standard, which requires the plaintiff to 'show that members of the public are likely to be deceived.'" *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1011 (N.D. Cal. 2012) (granting motion to dismiss for lack of pleading regarding actual reliance). "Generally, to be actionable under the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable consumer." *Singh v. Google Inc.*, No. 16-cv-03734, 2017 WL 2404986 *4 (N.D. Cal. June 2, 2017) (granting motion to dismiss fraudulent UCL claim because plaintiff failed to establish reasonable reliance). The plaintiff not only must "set forth more than the neutral facts necessary to identify the transaction but also must explain why the statement or omission complained of was false or misleading." *Id.* Because this claim sounds in fraud, it is subject to the heightened pleading standards of Rule 9(b). *I.B. ex rel Fife*, 905 F. Supp. 2d at 1012 (applying heightened pleading standard to UCL fraud claim).

Plaintiff bases its fraudulent business practices claim on alleged "false advertising," specifically that Meta made a single false statement—that it would provide explanations

1    sufficient to enable users to create compliant ads—in its Advertising Policies.  As explained

2    above (*see* Section V.A.3, *supra*), Plaintiff has not alleged any facts to show that this alleged

3    statement was false.  *See, e.g.*, *Garcia v. Sony Computer Entm't Am, LLC*, 859 F. Supp. 2d 1056,

4    1065 (N.D. Cal. 2012) (dismissing UCL claim where representations regarding console

5    compatibility were not clearly "false at the time when made").  Crucially, the Advertising Policies

6    only state that Meta will provide details on why an ad was rejected, which by Plaintiff's own

7    admission, Meta complied with.  *See* Compl. ¶ 40; s*ee, e.g.*, *Price v. Apple*, No. 21-cv-02846-

8    HSG, 2022 WL 1032472, at *6 (N.D. Cal. April 6, 2022) (dismissing fraudulent business practice

9    claim where plaintiff did not adequately allege that Apple made any false statements in its

10   marketing); *Baltazar v. Apple, Inc.*, 2011 WL 588209, at *5 (N.D. Cal. 2011) (same).

11          Further, Plaintiff does not allege how Meta's representation was "likely to deceive" the

12   public.  *I.B. ex rel. Fife*, 905 F. Supp. 2d at 1011.  Plaintiff simply parrots the legal standard for

13   fraudulent business practice (*see* Compl. ¶ 55) but does not plead any facts regarding how Meta's

14   alleged statement on ad rejections deceived the public.  *Terteryan v. Medical Depot, Inc.*, 2017

15   WL 5665006, at *2 (C.D. Cal. May 18, 2017) (finding Plaintiff's conclusory allegations that

16   "merely parrot the elements for UCL" cause of action insufficient to state a claim).  On the

17   contrary, Plaintiff admits that Meta complied with the representation by providing Plaintiff with

18   notice that its "ad isn't approved because it doesn't comply with our Advertising Policies" and

19   allowing Plaintiff to "click the ad name below to see why it wasn't approved and edit the ad to

20   have it reviewed again."  *See* Compl. ¶ 40.

21          Moreover, having alleged that it "read and reasonably relied upon the Advertising

22   Policies," Plaintiff cannot ignore other critical statements in those policies, including that Meta

23   reserves the right to "reject, approve or remove any ad for any reason," in its sole discretion, or

24   the fifteen pages of detail on prohibited and restricted ad content.  *See* Pl. Ex. 4.  Even if Plaintiff

25   unreasonably misinterpreted Meta's Advertising Policies, a representation does not become "false

26   and deceptive [under the UCL] merely because it will be unreasonably misunderstood by an

27   insignificant" segment of persons to whom the representation is addressed."  *San Miguel v. HP*

28   *Inc.*, 317 F. Supp. 3d 1075, 1089 (N.D. Cal. 2018) (finding Plaintiff did not identify any

statement in the advertising that would lead a reasonable consumer to believe that printer used

certain ink cartridges).  Further, Plaintiff fails to allege facts that establish Meta intended to

defraud Plaintiff.  *See* Section V.A.3, *supra*.  Plaintiff's conclusory allegations of non-

performance of a contractual term cannot be used to establish fraudulent intent.  *See* Section

V.A.3, *supra*.  For these reasons, Plaintiff's fraudulent business practice claim must be dismissed.

### b.  Plaintiff also fails to allege an unfair business practice under the UCL.

To determine whether conduct is "unfair" for the purposes of the UCL, courts generally

apply (1) a public-policy test that asks whether the practice violates a legislatively-declared policy

[tethering test], or (2) a balancing test that asks whether the harm to victims outweighs any

benefit.  *See Lozano v. AT&T Wireless Servs., Inc*., 504 F.3d 718, 736 (9th Cir. 2007)

(synthesizing California law).[6]

As an initial matter, because Plaintiff's "unfair" prong claim overlaps entirely with its

"fraud" prong claim, it should be dismissed as superfluous.  California courts have consistently

held that where the "plaintiff's unfair prong claims overlap entirely with their claims of fraud,"

the plaintiff's unfair prong claim cannot survive.  *See, e.g.*, *Ahern v. Apple Inc*., 411 F. Supp. 3d

541, 561 (N.D. Cal. 2019) (dismissing unfair UCL claims that overlapped with plaintiffs'

deficient fraud claims where both claims were based on allegations that Apple failed to disclose

that computers had certain defects).  Plaintiff bases its "unfair" prong claims on the same alleged

misconduct—*i.e.*, Meta's purported failure to provide "an explanation sufficient for [Plaintiff] to

create a compliant ad."  *Compare* Compl. ¶ 54 *with* ¶ 59.  In so doing, Plaintiff has failed to

meaningfully distinguish between its unfair and fraudulent business practice claims.  *See, e.g.*,

*Hadley v. Kellogg Sales Co*., 243 F. Supp. 3d 1074 (dismissing unfair UCL claim where the

---

[6] Under the tethering test, any finding of unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1169 (9th Cir. 2012) (granting motion to dismiss where plaintiff failed to allege that advertisements were against public policy, immoral, unethical, oppressive or scrupulous because advertisements warned of other restrictions and clearly disclosed complained of fee). Under the balancing test, courts evaluate "whether the business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' and 'requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Smith v. LG Electronics U.S.A., Inc.*, 2014 WL 989742, at *9 (N.D. Cal. March 11, 2014).

1    allegations indicated Plaintiff's unfair prong was based on the same contentions as its fraudulent

2    prong).

3          Even if the Court analyzes the unfair prong claim independent from the fraud prong claim,

4    Plaintiff's unfair prong claim still fails under both the tethering and balancing tests.  Critically,

5    Plaintiff has wholly failed to allege how the statement that Plaintiff bases its UCL claims on—

6    that Meta would provide details on why ads were rejected—was false or misleading.  Compl ¶ 57.

7    Thus, under the <u>tethering test</u>, to the extent there is a policy seeking to protect customers from

8    misleading statements, Plaintiff has not alleged facts to support that Meta ever made a misleading

9    statement.  *See, e.g.*, *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1025 (granting motion to

10   dismiss unfair UCL claim under both tethering and balancing tests where plaintiff failed to allege

11   facts showing that Netflix representations related to the extent of its subtitling were false or

12   misleading).  Again, by Plaintiff's own allegations, Meta complied with the provision in its

13   Advertising Policies that it would provide "details that explain" why an ad was rejected.  *See* Pl.

14   Ex. 4.  Moreover, for the <u>balancing test</u>, Plaintiff fails to allege any facts that go towards

15   comparing the alleged harm to consumers against the utility of Meta's conduct.  *See Price*, 2022

16   WL 1032472, at *5 (dismissing unfair UCL claim where allegations did "not compare the harm to

17   consumers against the utility of Apple's conduct, nor did they support the inference that Apple's

18   termination of its customers' Apple IDs was an 'immoral, unethical, oppressive, unscrupulous,

19   and substantially injurious' practice.").  Indeed, Plaintiff fails to allege any facts demonstrating

20   that Meta's conduct harms consumers, or that Meta made a "deliberate decision to withhold the

21   promised explanations during the ad review process," given that Meta provided the "promised

22   explanations." *See* Compl. ¶ 54.

23         Accordingly, because Plaintiff has failed to state an unfair business practice claim under

24   both the balancing and tethering tests, its claim must be dismissed with prejudice.

25                  **6.       Plaintiff fails to state a claim for conversion.**

26         "Conversion is the wrongful exercise of dominion over the property of another.  The

27   elements of a conversion are [1] the plaintiff's ownership or right to possession of the property at

28   the time of the conversion; [2] the defendant's conversion by a wrongful act or disposition of

property rights; and [3] damages." *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 221 (2003).  Plaintiff attempts to claim an intangible property right "in its collection of 25,000,000 online followers."  Compl. ¶ 46.  Plaintiff fails to allege facts sufficient to satisfy this standard.

*First*, Plaintiff fails to plead facts showing that it had any possessory interest in its "followers," and so the alleged "unpublishing" of Plaintiff's Webpages cannot give rise to an action for conversion.  *See Spates*, 114 Cal. App. 4th at 221 (requiring "plaintiff's ownership or right to possession of the property at the time of the conversion").  To determine whether a party has a "property right" for a conversion claim, the court applies a three-part test: "[f]irst, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (finding no property interest in a person's personal browsing history).  "[M]erely alleging ownership of [the allegedly converted property] is insufficient to establish conversion."  *Finton Construction, Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 213 (2015).

Here, Plaintiff merely asserts that Shared "owned an intangible property right in its collection of 25,000,000 online followers," and that Meta interfered with that property right by "unpublishing" Plaintiff's Webpages.  Compl. ¶¶ 46-48.  But Plaintiff does not allege that it had "exclusive possession or control" over these followers, as is required to plead the existence of property right.  *See, e.g.*, *Taylor v. Google LLC*, 2021 WL 4503495, at *7 (N.D. Cal. Oct. 1, 2021) (finding plaintiffs failed to allege facts demonstrating that their cellular data allowances were personal property capable of exclusive possession or control).  Nor does Plaintiff allege any facts to support that a Facebook users' followers are capable of exclusive possession or control, nor could it, especially given that users are free to unfollow a Facebook page at any time.  *See Spy Dialer, Inc. v. Reya LLC*, 2019 WL 1873296, at *8 (C.D. Cal. March 18, 2019) (dismissing conversion claim where "web traffic" was not something in which a property right could exist because it can be "redirected" and is thus "not capable of exclusive possession or control"); *see also Mattocks v. Black Entertainment Television LLC*, 43 F. Supp. 1311, 1321 (S.D. Fla. 2014) (finding no property interest in "likes" on Facebook, because users are free to revoke the "likes,"

1  so if anyone can be deemed to own the "likes" on a Page, it is the individual responsible for

2  them").

3        *Second*, Plaintiffs fail to adequately plead that Meta committed any "wrongful" act, which

4  is necessary to maintain a claim for conversion.  *See Bank of New York v. Fremont General*

5  *Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (conversion requires wrongful act).  Plaintiff alleges that

6  Meta "unpublished" all of Plaintiff's Webpages, which "substantially interfered with Shared's

7  intangible property right."  Compl. ¶ 48.  To the extent Plaintiff's allegations are based entirely

8  on the disabling of Plaintiff's Webpages, Meta's agreements allow Meta to terminate users'

9  accounts for failing to comply with "applicable laws, regulations and guidelines."  *See, e.g.*, Pl.

10  Ex. 4 ("Advertisers are responsible for understanding and complying with all applicable laws and

11  regulations. Failure to comply may result in a variety of consequences, including the cancellation

12  of ads you have placed and a termination of your account…").  Far from being "wrongful,"

13  Plaintiff consented to the agreements cited in the Complaint, as well as the Terms of Use, and

14  thus Meta's power to permanently disable Plaintiff's access to its Webpages.  Plaintiff's "consent

15  negat[es] the wrongful element of the defendant's act, and prevents the existence of a tort,

16  including the tort of 'conversion.'"  *Tavernier v. Maes*, 242 Cal. App. 2d 532, 552 (1966); *see,*

17  *e.g.*, *King v. Facebook, Inc.*, No. 3:21-cv-04573-EMC, 2021 WL 5279823, at *10 (N.D. Cal.

18  Nov. 12, 2021) (dismissing conversion claim where Plaintiff failed to allege a wrongful act with

19  respect to destruction of content, and Meta was "not under any obligation not to destroy (or to

20  otherwise retain) the content associated with her account").

21      **B.**    **Section 230 Of The Communications Decency Act Independently Bars All**
22                 **Liability.**

23        Even if Plaintiff had pled facts to assert claims against Meta—which it has not—

Plaintiff's claims still fail for the independent reason that they are barred as a matter of law under

24  Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230 *et seq*.  Section 230

25  "protects certain internet-based actors from certain kinds of lawsuits."  *Barnes v. Yahoo!, Inc.*,

26  570 F.3d 1096, 1099 (9th Cir. 2009).  Section 230 "establish[es] broad federal immunity to any

27  cause of action that would make service providers liable for information originating with a third-

28  party user of the service."  *Perfect 10, Inc. v. CCBill LLC*, 481 F.3d 751, 767 (9th Cir. 2007)

1  (internal quotations and citations omitted), o*pinion amended and superseded on denial of reh'g*,

2  488 F.3d 1102 (9th Cir. 2007); *accord Fields v. Twitter, Inc.*, 200 F. Supp. 3d 964, 969 (N.D. Cal.

3  2016).

4       Crucially, Section 230 bars claims based on a service provider's decisions about

5  "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party

6  content"—the claims Plaintiff alleges here.  *Barnes*, 570 F.3d at 1102 (holding Section 230

7  immunized any "activity that can be boiled down to deciding whether to exclude material that

8  third parties seek to post online"); *see e.g. Zimmerman.,* 2020 WL 5877863, at *1 (holding that

9  Section 230 preempted California free speech clause); *King v. Facebook, Inc.*, No. 19-CV-1987,

10  2019 WL 4221768, at *3–4 (N.D. Cal. Sept. 5, 2019) (holding that Section 230 protected

11  websites "regardless of their moderation process").

12       Under Section 230(c)(1), a claim should be dismissed if (1) the defendant is a

13  "provider . . . of an interactive computer service[;]" (2) the allegedly offending content was

14  "provided by another information content provider[;]" and (3) Plaintiffs' claims treat the

15  defendant as the "publisher" of that content. 47 U.S.C. § 230(c)(1); *Sikhs for Justice, Inc. v.*

16  *Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015).  Plaintiff's claims meet all three of

17  these elements.

18         **1.**      **Meta is an interactive computer service provider.**

19       Section 230 defines an interactive computer service provider as "any information service,

20  system, or access software provider that provides or enables computer access by multiple users to

21  a computer server."  47 U.S.C. § 230(f)(2).  California and federal courts have uniformly held that

22  Meta meets Section 230's "interactive computer service" definition.  *See e.g.  Cross v. Facebook,*

23  *Inc.*, 14 Cal. App. 5th 190, 206 (2017); *Calise v. Meta Platforms, Inc*., No. 21-cv-06186-JSW,

24  2022 WL 1240860, at *2 (N.D. Cal. April 27, 2022); *Fed. Agency of News LLC*, 432 F. Supp. 3d

25  at 1117; *Ebeid*, 2019 WL 2059662, at *3; *Sikhs for Justice*, 144 F. Supp. 3d at 1093.

26         **2.**      **The content at issue was provided by another information content provider.**

27       To satisfy this prong, the information for which the plaintiff seeks to hold Meta liable

28  must come from an "information content provider" that isn't Meta.  § 230(c)(1).  This inquiry is

simple if, as here, the "complaint admits that [the plaintiff] is the source of the information that Meta removed" while "nowhere alleg[ing] that Facebook provided, created, or developed any portion" of the advertising content.  *Fed. Agency of News LLC*, 395 F. Supp. 3d at 1305–06 (holding that the allegation that plaintiff "operate[s] a Facebook page through which [plaintiff] has published its posts" was an "admi[ssion] that [it] is the source of the information that Facebook removed").  Facebook users, including advertisers like Plaintiff, fit this definition, as courts have held.  *See, e.g., Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 939 (S.D. Cal. 2013) (CDA applied where website sold advertising space but advertiser provided the content); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at \*7 (N.D. Cal. May 9, 2019) ("Plaintiff argues that the information at issue was not provided by another information content provider because plaintiff himself—not some other third-party—provided the information. That argument has been repeatedly rejected."); *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at \*5 (N.D. Cal. July 8, 2016) (holding that plaintiff's own content satisfied second prong of the CDA immunity test).

### 3.     Each of Plaintiff's claims seek to treat Meta as a "publisher."

Under Section 230, a plaintiff's claim treats a defendant as a "publisher" when it seeks to hold a service provider liable for its purported exercise of "editorial functions"—such as "deciding whether to publish, withdraw, postpone or alter content."  *See Barnes*, 570 F.3d at 1102.  *Lewis,* 461 F. Supp. 3d at 954 (holding that plaintiff's claims that the defendants "wrongfully … restricting and removing his videos" constituted publishing functions under Section 230).  What matters here is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'  If it does, Section 230(c)(1) precludes liability."  *See Barnes,* 570 F.3d at 1101–02; *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (holding that "removing content is something publishers do" and that Section 230 barred a discrimination claim); *see also Caraccioli v. Facebook, Inc.*, 167 F. Supp.3d 1056, 1064-66 (N.D. Cal. 2016) (dismissing breach of contract and unfair practices under Section 230); *Goddard v. Google, Inc.,* 640 F. Supp. 2d 1193, 1197–99 (N.D. Cal. 2009) (dismissing fraud based on "web-based advertisements" under Section 230); *Lancaster v. Alphabet Inc.*, No. 15-CV-05299, 2016 WL

1    3648608, at *5 (N.D. Cal. July 8, 2016) (dismissing breach implied covenant of good faith); *Jurin*

2    *v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (fraud).

3          Here, each of Plaintiff's claims—conversion, UCL violations, breach of contract, breach

4    of the implied covenant, and intentional and negligent misrepresentation, *see* Compl. ¶¶ 45-111—

5    stems from Meta's decisions "whether or not to prevent [Plaintiff from] posting" certain ads, and

6    whether to disable Plaintiff's Webpages, which is "precisely the kind of activity for which

7    Section 230 was meant to provide immunity."  *Fair Hous. Council of San Fernando Valley v.*

8    *Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008).  Numerous courts have dismissed

9    these claims when they have been premised on a defendant's decision to remove users or user

10   content from its website.  *See, e.g.*, *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th at 28–30 (dismissing

11   fraud claim); *King v. Facebook, Inc.*, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) (dismissing

12   breach of contract, implied covenant, and UCL claims).

13         Ultimately, Plaintiff's claims are "the classic kind[s] of claim[s] that [have been] found to

14   be preempted by section 230," and California and federal courts have "uniformly rejected" them.

15   *Murphy*, 60 Cal. App. 5th at 27 ("Courts have routinely rejected a wide variety of civil claims like

16   [plaintiff's] that seek to hold interactive computer services liable for removing or blocking

17   content…or failing to do so…on the grounds [that] they are barred by the CDA.").  The

18   conversion claim, for instance, seeks to hold Meta liable for its decision to remove Shared from

19   Facebook.  Compl. ¶¶ 45-51.  Plaintiff's other claims—UCL violations, breach of contract,

20   breach of the implied covenant, intentional misrepresentation, and negligent misrepresentation—

21   all involve allegations that Meta rejected certain advertising content without providing notice or

22   detailed enough explanations as to why.  Compl. ¶¶ 52-111.  At their core, each of Plaintiff's

23   claims involve Meta's decision to limit Plaintiff's ability to post advertising content and disable

24   Plaintiff's Webpages—and these are just the sort of allegations that courts consistently have held

25   constitutes protected publisher activity.  *See, e.g.*, *King*, 2019 WL 4221768 at *3 (dismissing

26   claims premised on theory that Meta removed posts, blocked content, or suspended accounts);

27   *Zimmerman v. Facebook, Inc.*, 2020 WL 58778363 (N.D. Cal. Oct. 2, 2020) (dismissing claims

28   relating to defendants' decision to block access to plaintiff's profile as barred by Section 230);

1  *Goddard v. Google, Inc.,* 640 F. Supp. 2d at 1197–99 (CDA barred claim premised on "allegedly

2  fraudulent web-based advertisements" published by Google); *Fields v. Twitter, Inc.*, 217 F. Supp.

3  3d 1116, 1126 (N.D. Cal. 2016) (rejecting failure-to-warn claim because the "theory of liability

4  [was] inherently tied to content" and would "effectively requir[e defendant] to police and restrict

5  its provision of [user] accounts").

6       Accordingly, dismissal is required under Section 230(c)(1).

7      **C.  Plaintiff Should Not Be Granted Leave To Amend.**

8       Plaintiff should not be given the opportunity to replead its claims.  Leave to amend is

9  inappropriate if "the pleading could not possibly be cured by the allegations of other facts."

10  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*).  Here, leave to amend would be

11  inappropriate for two reasons.  *First*, as established above (*see* Section V.A, *supra*), each of

12  Plaintiff's claims suffer fatal deficiencies that it cannot overcome with further amendments.

13       *Second*, all of Plaintiff's claims will be barred by Section 230(c)(1) no matter what

14  additional facts it pleads (*see* Section V.B, *supra*), which is why courts generally deny leave to

15  amend when "there is CDA immunity."  *King*, 2021 WL 5279823, at *13 (dismissing claims

16  barred by Section 230 with prejudice because "it would be futile for [Plaintiff] to try to amend the

17  claim[s]"); *Brittain*, 2019 WL 2423375, at *4 (dismissing claims barred by Section 230 with

18  prejudice "[b]ecause plaintiff cannot cure this defect").

19  **V.  CONCLUSION**

20       For the foregoing reasons, Meta respectfully requests that the Court dismiss the Complaint

21  with prejudice.

23  Dated:  June 8, 2022            ORRICK, HERRINGTON & SUTCLIFFE LLP

25             By:  */s/ Jacob M. Heath*
               JACOB M. HEATH

27              Attorney for Defendant
            META PLATFORMS, INC.