UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 22-cv-02366-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, RULING ON ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL, AND DENYING MOTIONS TO EXCLUDE EXPERT TESTIMONY** |

**I. INTRODUCTION**

Shared, an online content publisher, brought this suit over Meta's averred misrepresentations in the social media company's advertising policies. Shared allegedly spent approximately $53 million (CAD) on Facebook advertising before Meta, which owns the platform, removed Shared from Facebook in October 2020. While Shared initially raised both breach of contract and fraud-based claims for relief, only its fraudulent inducement and California Unfair Competition Law ("UCL") claims remain. Defendant Meta now seeks summary judgment and subsequent dismissal of all claims. Plaintiff Shared contends it is entitled to partial summary judgment on the issue of Meta's intent to defraud. Because Shared's claims are barred by the relevant statutes of limitations, Meta is entitled to summary judgment on all three of Shared's claims. Summary judgment is additionally proper on Shared's UCL claim because Shared does not seek relief cognizable under that statute. Shared's motion for summary judgment is not only moot, but also fails substantively to justify a finding in Shared's favor. For the following reasons,

1   Meta's motion for summary judgment on all claims is granted.

2   Shared and Meta each also bring three motions to exclude expert testimony of the
opposing party. Given the grant of summary judgment in favor of Defendant Meta, all six pending
motions to exclude are denied as moot.

## II. BACKGROUND

The factual background of this matter has been set out in greater detail in previous orders. *See, e.g.*, Dkt. No. 115. In brief, Meta suspended Shared from Facebook in October 2020. Shared then sued, raising multiple claims for relief based on both its removal from Facebook and Meta's purported failure to comply with its own terms. Meta's motion to dismiss Shared's first amended complaint was granted in part because Section 230(c)(1) of the Communications Decency Act barred Shared's claims relating to its removal from Meta's platform. Shared's breach of contract, fraudulent inducement, and UCL claims—all based on the "Edit Your Ads" provision ("EYAP") of Meta's terms—proceeded. In March 2025, the parties stipulated to the dismissal of Shared's breach of contract claims.

At issue here is Meta's self-serve advertising service, which allows advertisers to purchase ads that Meta places on its online services, like Facebook. Starting on August 29, 2016, Meta's Advertising Policies included the "Edit Your Ad" provision, which stated: "If your ad doesn't get approved," Meta will "send you an email with details that explain why," and "[u]sing the information in your disapproval email, you can edit your ad and create a compliant one." *E.g.*, Dkt. No. 94-4, at 2. The Advertising Policies further provided that if an advertiser "can't edit [its] ad or [felt] it was a mistake that it wasn't approved," the advertiser could request review of the decision. *Id.* Advertisers pay only for ads that are approved and run. Shared avers Meta's representations in the EYAP fraudulently induced Shared into entering multiple contracts to purchase self-serve advertisements. Accordingly, Shared also seeks restitution under California's

UCL, based on Meta's alleged unfair business practice of misrepresenting its willingness or ability to share information with advertisers in accordance with the EYAP.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (quotation marks omitted).

After the moving party meets its burden, the nonmoving party must bring forth material facts, or "facts that might affect the outcome of the suit under the governing law" to preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 520 (1991). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party meets its burden and the nonmoving party fails to raise a genuine question of material fact, then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23.

**IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant seeks summary judgment on all three remaining claims. Meta argues it is entitled to summary judgment because (1) Shared waived its claims by repeatedly purchasing ads, (2) Shared has insufficient evidence to show Meta made misrepresentations which Shared relied upon, and (3) Shared's claims are untimely. Only the final argument warrants summary judgment in favor of Meta.

Additionally, Meta avers Shared's UCL claim is invalid because Shared is not seeking a cognizable remedy under that statute. Meta is correct that Shared's restitution calculation is too speculative under the UCL. Therefore, Meta is further entitled to summary judgment on Shared's UCL claim.

As Shared's UCL claim is premised on the same representations as its fraudulent inducement claims, Meta argues all three should fail. As Meta contends, Plaintiff's fraudulent inducement claims are based on a single purported "wrong": that Plaintiff was induced to enter into the Self-Serve Advertising Contract by Meta's affirmative misrepresentations contained in the EYAP of Meta's Advertising Policies. Specifically, Plaintiff contends that the EYAP guaranteed—and Meta failed to provide—an ad-rejection message identifying the specific policy the ad violated, and which elements were offending.

**A. Shared did not clearly waive its claims by merely continuing to purchase advertisements from Meta.**

Meta avers Plaintiff impliedly waived its misrepresentation and UCC claims by acting inconsistently with any intent to enforce its legal rights against Meta. "Waiver is an intentional relinquishment of a known right." *Gould v. Corinthian Colls., Inc.*, 192 Cal. App. 4th 1176, 1179 (2011). Waiver need not be explicit. Instead, "[i]t may be implied through conduct manifesting an

intention to waive." *Id.* "[W]here a party's conduct is so inconsistent with the intent to enforce a legal right, the intention to give up that right will be presumed." *Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1194 (2006). "Implied waiver, especially where it is based on conduct manifestly inconsistent with the intention to enforce a known right, may be determined as a matter of law where the underlying facts are undisputed or [where] the evidence is susceptible of only one reasonable conclusion." *Id.* at 1191 (quotation marks and internal citation omitted). Waiver is a question of fact. *See Gould*, 192 Cal. App. 4th at 1178.

Meta contends Shared's renewed purchases, after repeatedly witnessing Meta's averred failure to comply with the EYAP, manifested Shared's intent to waive any claim based on Meta's inadequate performance. Meta's argument, which relies heavily on *Oakland Raiders*, fails on at least two fronts.

First, Meta's characterization of later ad purchases as "affirming" previous, potentially fraudulently induced orders cannot support an analogy to *Oakland Raiders* or other implied waiver cases.[1] In *Oakland Raiders*, the plaintiff discovered the falsity of some of defendant's contract representations, but still negotiated and executed a new agreement on the same subject matter. *Oakland Raiders*, 144 Cal. App. 4th at 1190–91. The plaintiff there, through a new contract, reaffirmed the validity and enforceability of the fraudulent predecessor. *Id.* In contrast, Shared's purchases were governed by a single contract.

Second, Meta has not established by clear and convincing evidence that Shared had actual knowledge of fraud. Unlike in *Oakland Raiders*, where the plaintiff admitted to discovering the

---

[1] This portrayal is inconsistent with other portions of Meta's briefing. Meta elsewhere characterizes subsequent purchases as merely new orders flowing from the initial contract.

falsity of the defendant's representations, Shared contests its knowledge of Meta's fraudulent conduct. While Meta may have demonstrated Shared had constructive knowledge of potentially fraudulent conduct, inquiry notice is too far removed from actual knowledge to justify an analogy to *Oakland Raiders*. Meta cannot bridge the gulf between this case and a case of undisputed implied waiver. Therefore, summary judgment is not warranted on this ground.

**B. Shared has established genuine questions of fact regarding Meta's averred misrepresentations and Shared's reliance on those statements.**

Meta argues summary judgment on all three claims is proper because it made no false representations to Shared. The parties spill much ink over the text of the "Edit Your Ad" provision and what exactly Meta promised to do in the case of a rejection. The EYAP provides: "If your ad doesn't get approved, we'll send you an email with details that explain why. Using the information in your disapproval email, you can edit your ad and create a compliant one." The parties fight vigorously over the meaning of "details" and whether "can" denotes a promise or a mere possibility of a path to compliance. Given the briefing and the record, there exists a genuine question of fact as to the meaning of these terms.

Meta also undermines Shared's claim of reliance. As Shared points out, the veracity or reasonableness of reliance is almost always a question better suited for a finder of fact. *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). Shared has adequately raised a question of fact as to its own reliance. Shared, for example, can point to deposition testimony from its own executive officer outlining the weight of the EYAP provision in entering the contract. Therefore, this is a question better suited for the jury, and summary judgment based on the merits of Shared's claims is improper on this basis.

**C. Meta demonstrates Shared was on inquiry notice of potential fraud, thus making**

**Shared's claims for relief untimely.**

Meta avers all three claims are time-barred. Shared filed its first complaint in April 2022. The UCL's statute of limitations is four years, in contrast to fraudulent inducement's three-year relevant period. Cal. Bus. & Prof. Code § 17208; Cal. Code Civ. Proc. § 338(d). Therefore, Shared's UCL claim is timely if it accrued after April 2018 and its misrepresentation claims are timely if they accrued after April 2019. While Shared raises examples of California courts granting COVID-19-related extensions of relevant periods, such an extension would not save Shared's claims here. Meta convincingly demonstrates Shared was on inquiry notice of the potential fraud before April 2018, barring all three of Shared's claims for relief.

Shared contends there is a genuine issue as to when Shared could have been on inquiry notice. Shared additionally invokes continuous accrual and the discovery rule's reasonable investigation exceptions. These arguments fail to salvage Shared's untimely claims.

*i.      Legal Standard*

A fraud claim accrues when the plaintiff discovers "the facts constituting the fraud." *Chohrach v. Bank of Am. NA*, 592 F. App'x 628, 629 (9th Cir. 2015). The knowledge element accrues with either "actual knowledge" of the fraud or when the plaintiff learns facts that "should raise suspicion and trigger a further investigation," sometimes referred to as inquiry notice. *See Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (2021); *Hobart v. Hobart Est. Co.*, 26 Cal. 2d 412, 437 (1945) ("The statute commences to run … after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.").

Accordingly, once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, the statute commences to run. *See Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1111, 245 Cal.Rptr. 658, 751 P.2d 923 (1988)); *see also General Bedding Corp. v. Echevarria*, 947 F.2d

1395, 1379 (9th Cir. 1991) (defining inquiry notice as met when the plaintiff "has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation ...") (citations and quotation omitted); *Hamilton Materials, Inc. v. Dow Chemical Corp.,* 494 F.3d 1203, 1206 (9th Cir. 2007) (A "plaintiff is on inquiry notice of its fraud claims when he learns, or at least is put on notice, that a representation is false.") (internal quotations and citation omitted). Inquiry notice is the suspicion of a factual basis, rather than the legal theory, for an element of a plaintiff's claim. *Norgart v. The Upjohn Co.,* 21 Cal.4th 383, 397 (1999) (explaining a plaintiff can be put on notice by facts underlying "wrongdoing, causation and harm," among others) (citing *Jolly,* 44 Cal.3d at 1110).

While a cause of action accrues, and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, the discovery rule can save an otherwise late-filed claim. *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 803 (2005). If a plaintiff can show that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action, then that claim did not accrue at the moment of inquiry notice. *Id.* The party invoking the investigation exception needs to demonstrate it could not have discovered the basis for its claim with reasonable diligence. *Boston Telecomm. Grp. Inc. v. Wood*, 2012 WL 273598 at *6 (N.D. Cal. Jan. 30, 2012).

*ii.   Discussion*

Meta argues Shared had inquiry notice of Meta's potential fraud as early as 2016. In 2016, Shared apparently had already received a large number of rejection emails that did not provide sufficient reasoning for the rejection. Meta relies on deposition testimony stating Shared executives understood in 2016 they were not receiving the customized rejection messages

ORDER ON SUMMARY JUDGMENT MOTIONS
CASE NO. 22-cv-02366-RS

8

promised by the EYAP. At one point, Shared's executive admits "it should have been clear to us that there was information that was missing." Meta argues this admission is enough to show constructive knowledge. *See Kline v. Turner*, 87 Cal. App. 4th 1369, 1372-74 (2001) (affirming summary judgment where plaintiff "had reasonable cause to suspect wrongdoing … such that a reasonable person would be placed on inquiry").

Meta additionally highlights Shared's own admission that it "could have" suspected wrongdoing as early as July 2017. Shared explains once it lost its customer service representative, it had to face the reality of non-compliant rejections with no meaningful assistance from Meta. Shared highlights the dearth of information and the difficulty of this predicament in its own complaint. At this point in 2017, as Shared tells it, it only had notice of its potential breach of contract claim. However, this is a distinction without a difference. Inquiry notice does not require a plaintiff to suspect every element of a claim. *See Jolly v. Eli Lilly & Co*, 44 Cal. 3d 1103, 1111 (1988) ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery."). While Shared may not have suspected Meta's knowledge of the falsity of the EYAP provision, Shared was on notice of the facts of the wrongdoing – Meta was not fulfilling its purported duties under the EYAP.

Finally, Meta argues the sheer number of rejections and theoretically deficient rejection notices should have put Shared on notice by April 2018. Before April 2018, Meta had rejected more than 9,200 of Shared's ads, and Plaintiff has produced more than 1,800 rejection emails contending these were insufficient under the representations Meta made in the EYAP. Shared admits the substance of the rejection emails did not change over time. Moreover, Shared claims the vast majority of the rejection emails were non-compliant. According to Shared's employee's deposition testimony, it was a very rare circumstance in which Meta provided information

ORDER ON SUMMARY JUDGMENT MOTIONS
CASE NO. 22-cv-02366-RS

9

consistent with Plaintiff's interpretation of the EYAP. Given the numerosity of these averred deficient rejections, Meta is correct to point out Shared had reasonable cause to suspect wrongdoing.

Shared repeatedly tries to find daylight between inquiry notice of its breach of contract claim and inquiry notice of its fraud claims. However, given the regularity of the breach, Shared should have suspected a pattern or sought to inform Meta of the almost total failure to meet the EYAP's promises. Moreover, Shared avers Meta negligently misrepresented its ability to provide adequate rejection information. Shared need not suspect intentional wrongdoing to be put on inquiry notice of negligence. Therefore, Shared needed no additional fact to suspect Meta's misrepresentations.

Shared instead puts forward October 2020 as the date of its inquiry notice and therefore claim accrual. Shared mainly relies on its executive Mr. Nabigon's deposition that Shared did not suspect fraud until October 2020 when it was removed from Facebook. As Meta correctly argues, this testimony as to the date of actual knowledge is not directly responsive to the above evidence of earlier inquiry notice.

While Shared argues none of the above facts trigger adequate notice, the alleged fraud here is that Meta misrepresented the information it would be providing in ad rejection emails. Plaintiff had in its possession the "Edit Your Ad" provision and the thousands of ad rejection emails and messages. Shared cannot put forward any evidence raising a genuine issue of fact as to its knowledge of Meta's noncompliance. Given Shared's knowledge of Meta's near continuous failure to comply with the EYAP, its argument that it had no facts related to intentional fraud falls short.

Even if Shared were on inquiry notice, Shared argues the continuous accrual doctrine saves

its claims, or at least claims based on advertisement purchases made after April 2018 or April 2019. The continuous accrual theory "is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197–98 (2013). To address this concern, "separate, recurring invasions of the same right can each trigger their own statute of limitations." *Id.* Shared concludes some or all of its claims are timely because each time Shared bought an ad, it formed a new agreement with Meta and therefore the fraud harmed Shared anew.

This argument fails because it misrepresents the nature of the purchase agreements with Meta. Based on the language of Meta's Advertising Policies and the Self-Serve Ad Terms, it is apparent Shared and Meta entered into a single contract which governed individual "orders." Moreover, Shared's own complaint locates the fraud in a single contract. Shared avers it was induced in 2016 by Meta's fraudulent representation that it would comply with its own EYAP. In response to Meta's motion, Shared cannot point to any evidence it was induced to purchase individual ads after 2018 based on the continuing misrepresentation. Therefore, the continuous accrual exception does not save Shared's claims.

Finally, Shared falls back on the discovery rule's reasonable expectation exception. Shared argues it at least raises a genuine question of fact as to whether a reasonable investigation would have uncovered the basis for a fraud claim. At this point, Shared must point to facts showing diligent investigation would not have uncovered potential causes of its injury. *See Fox*, 110 P.3d at 921 ("If such an investigation would have disclosed a factual basis for a cause of action, the statute

of limitations begins to run on that cause of action when the investigation would have brought such information to light."). As a threshold matter, Shared was aware of the cause of its injury – Meta's noncompliance with the EYAP. Further investigation was not necessary to uncover additional clues pointing to Meta's potential wrongdoing.

Even assuming Shared required further investigation to bring a negligent or intentional misrepresentation claim against Meta, Shared cannot point to any diligent action on its own part during the relevant statutory period. Shared relies on two emails Mr. Nabigon sent to Meta attempting to seek more information as to why Shared was *removed* from Facebook. Shared argues its futile attempts to seek information on Meta's policies demonstrate any investigation into potential fraud would have been fruitless. Meta correctly replies that Mr. Nabigon's "investigative" emails sought information about Shared's removal from Facebook, rather than insufficient rejection information regarding certain advertisements.

Shared's analogy to *Boston Telecomm. Grp. Inc. v. Wood* is also misplaced. 2012 WL 273598, at *5-6 (N.D. Cal. Jan. 30, 2012). In that case, summary judgment was not warranted because in response to a letter from the plaintiff noting potential misrepresentations, the defendant made assurances, on which plaintiff reasonably relied, that his misrepresentations were in fact true. *See id.* The plaintiff pointed to specific instances of the defendant denying he had made misrepresentations and promising the project would come to fruition. *Id.* (holding the delayed discovery rule may not be applicable where defendant "cover[ed] up" alleged fraud). Notably, the plaintiff in that case had no external evidence that the defendant was untruthful. This is not the case here. Shared had plenty of evidence Meta was not complying with its promises under the EYAP. Shared's deposition testimony that Meta representatives told them it would "get better" does not rise to the level of concealment of any previous misrepresentation.

Meta's averred representations that it would in the future comply with the EYAP, despite not having done so for at least several years, does not unwind inquiry notice. *See Martifer-Silverado Fund I, LLC v. Zhongli Sci. & Tech. Grp. Co.*, No. 4:19-cv-04243-YGR, 2023 WL 3012528, at *7-8 (N.D. Cal. Mar. 22, 2023) (noting "subsequent conduct generally does not stop the clock after notice"; *In re Valence Tech., Inc. Sec. Litig.*, 987 F. Supp. 796, 803 (N.D. Cal. 1997) ("Once the facts constituting inquiry notice are disclosed, neither reassurances accompanying the relevant notice nor the continued failure to disclose the facts allegedly misrepresented in the first place, relieves the plaintiff of his duty to undertake reasonable inquiry or tolls the statute." (cleaned up)), *rev'd sub nom. on other grounds by Berry v. Valence Tech., Inc.*, 175 F.3d 699 (9th Cir. 1999).

Therefore, Shared cannot point to facts supporting its invocation of the reasonable investigation exception. Because the discovery rule cannot save Shared's claims, filed more than four years after it was on inquiry notice of Meta's averred wrongdoing, summary judgment is proper on timeliness grounds.

**D. Shared's calculation of restitution is too speculative to support its UCL claim.**

While Shared's UCL claim is untimely, it is further invalid because Shared does not seek relief cognizable under that statute. "While the scope of conduct covered by the UCL is broad, its remedies are limited." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). UCL plaintiffs are "generally limited to injunctive relief and restitution." *Id.* (citation omitted). California courts define "restitution" as "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken." *Stanford Health Care v. Trustmark Servs. Co.*, No. 22-cv-03946, 2023 WL 2743581, at *4 (N.D. Cal. Mar. 31, 2023) (citation omitted).

Here, Shared seeks three categories of monetary relief: (1) reimbursement of office expenses; (2) reimbursement of development expenses; and (3) money paid for ads that were approved and run. Meta argues the first two categories plainly contravene the well-settled principle that damages cannot be recovered for a UCL action. *Korea Supply*, 29 Cal. 4th at 1144; *accord Clark v. Superior Ct.*, 50 Cal. 4th 605, 613 (2010). Meta further contends Shared's first and second damages theories simply seek redress for Plaintiff's own losses, not monies paid to Meta. Shared acknowledges these categories are compensatory damages sought under its fraudulent inducement claims.

As to the third category, Shared avers it would not have bought as much in advertising services had it known Meta would not meet its obligations under the EYAP. Meta highlights that Shared only paid for approved ads and therefore Meta did not profit from Shared's wrongfully rejected ads. Shared responds it is seeking 80% of the money it spent on advertisements between 2016 to 2019 under the theory this money would not have been spent on the successful ads but for Meta's fraudulent misrepresentations. Shared argues Meta's unfair business practice was the direct cause of these expenditures, citing only to deposition testimony from its CEO who estimates Shared would have spent 80% less if not for the EYAP. It is entirely unclear from where Shared's CEO, Jordan Nabigon, pulls this 80% calculation. Mr. Nabigon's speculation is too slender a reed to support a restitution amount at this stage. Given the dearth of other evidence in support of Shared's restitution calculation, Shared cannot show a sufficient connection between the legal violation and the relief sought. Therefore, Meta is independently entitled to summary judgment on Shared's UCL claim.

# V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff seeks partial summary judgment on the issue of Meta's intent. Shared argues the record shows Meta knew the representations in the EYAP were false, or at the very least it had no reasonable basis on which to believe the representations were true. This motion is not only moot in light of the grant of defendant's motion but is also substantively deficient.

## A. There is a genuine issue of fact as to whether Meta intentionally made misrepresentations in the EYAP.

Shared argues several key facts from the record support summary judgment in its favor. First, it points out Meta's admission in another proceeding that it would be "wildly infeasible" to provide sufficient details to enable each advertiser to create a compliant ad. Accepting this argument requires accepting Shared's preferred interpretation of the contract provision as essentially undisputed. As discussed above, parties struggle over the interpretation of can, which Meta contends is closer to "may" or "might." Shared tries to read this provision in light of Meta's Advertising Policies as a whole. It also makes absurdity and superfluity arguments to undercut Meta's preferred interpretation. Given the competing definitions within this provision, it is not proper to adopt Shared's interpretation at the summary judgment stage. Accordingly, Meta's omission that it would be "wildly infeasible" to comply with Shared's version of the EYAP is not an admission of knowledge as to falsity of the EYAP.

Next, Shared points to evidence that half of Meta's advertisement rejections were false positives. It also highlights Meta's expert testimony, which includes an omission that even Meta would not necessarily know whether an ad was compliant. Based on these two facts, Shared argues Meta knew it could not comply with the EYAP as written, even on Meta's own interpretation of its obligations. Essentially, Meta could not provide an explanation for rejection if

1  it regularly rejected already compliant ads and did not know if some of the ads were defective in
2  the first instance. Meta cites its own expert testimony contesting these two tranches of evidence.
3  Given the factual questions at issue, partial summary judgment on Meta's intent and the severity
4  of its misrepresentations would be unwarranted, even if the statute of limitations did not otherwise
5  bar Plaintiff's claims.

### B. Shared is not entitled to invoke nonmutual collateral estoppel on the issue of Meta's intent fraudulently to induce.

Shared argues an arbitrator's finding entitles it to issue preclusion at this stage. In a streamlined arbitration proceeding with a different advertiser plaintiff, the arbitrator found Meta knowingly misrepresented the EYAP. State law controls whether a non-judicial adjudication is given preclusive effect on state-law claims being heard in federal court. *Jacobs v. CBS Broadcasting, Inc.*, 291 F.3d 1173, 1176-79 (9th Cir. 2002) (declining to apply non-mutual offensive issue preclusion under California law); *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) ("[W]e apply the collateral estoppel rules of the forum state.").

Meta argues nonmutual collateral estoppel of an arbitration award is improper under California law. In *Vandenberg v. Superior Court*, the California Supreme Court held that "a private arbitration award, even if judicially confirmed, may not have nonmutual collateral estoppel effect under California law unless there was an agreement to that effect in the particular case." 21 Cal. 4th 815, 824 (1999). Shared points out *Vandenberg* is not dispositive because in that case, "[n]o party…suggested the arbitration…at issue [was] governed by the Federal Arbitration Act, and we have no occasion to consider whether application of the FAA would alter our ruling," *Id.* at 824, n.2. Because the FAA governed the arbitration proceeding in question, *Vandenberg* is not dispositive.

Setting aside California's bar, Shared must meet several requirements for issue preclusion to apply. "The prerequisites for nonmutual collateral estoppel are whether (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom [collateral estoppel] is asserted was a party or in privity with a party in the prior action." *Collins v. D.R. Horton, Inc.*, 505 F.3d 864, 882, n.8 (9th Cir. 2007) (quotations and citations omitted).

Meta argues it was not given a full and fair opportunity to litigate the issue in the prior action. Meta explains that arbitration used expedited procedures designed for cases with less than $75,000 in controversy. The arbitrator did not hold a hearing, receive testimony under oath, or permit cross examination. Shared avers Meta cannot contest the procedure Meta itself selected. However, given the fairness concerns animating limitations on collateral estoppel, Meta's consent to streamlined procedures in a lower value dispute does not deprive it of an opportunity to litigate here. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979). Moreover, Meta's knowing misrepresentation is the very core of this dispute. To apply an arbitrator's decision from an expedited case to decide such a central issue rings of unfairness. Therefore, collateral estoppel should not apply. Even were the limitations defense no obstacle, Shared has not demonstrated any grounds for summary judgment in its favor. Therefore, its motion for summary judgment is denied.

### VI. ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL

Plaintiff Shared stated at the hearing held on March 27, 2025, that it does not request any of its materials be filed under seal. Accordingly, the administrative motions based on Shared's averred confidential material, Dkt. Nos. 139, 142, 186, are denied as moot. Meta then filed a statement, Dkt. No. 200, withdrawing three of its administrative motions to seal, Dkt. Nos. 134,

170, 185. These administrative motions are accordingly denied as moot. Therefore, it appears most of the requests to seal evidence and materials in the parties' summary judgment briefing have been withdrawn. To the extent any request has not been withdrawn, Meta makes sweeping requests to file full briefs under seal without a compelling reason.

To overcome the presumption in favor of public access to a judicial record, there generally must be "compelling reasons supported by specific factual findings." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."). Therefore, with respect to Plaintiff's Notice of Motion and Motion for Summary Judgment, Dkt. No. 132, the administrative motion to seal, Dkt. No. 134, is denied. With respect to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Dkt. No. 159, the administrative motion to seal, Dkt. No. 164, is denied. Finally, with respect to Shared's Reply in Support of Its Motion for Summary Judgment, Dkt. No. 175, the administrative motion to seal, Dkt. No. 179, is denied. Shared is directed to file the above three documents on the public docket.

The remaining sealed material pertains to the parties' six pending motions to exclude expert testimony. Meta contends that compelling reasons exist here, where the information at issue could be used "as sources of business information that might harm a litigant's competitive standing." *In re Electronic Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008). Meta has adequately supported its averment that the publication of the information would put Meta at a competitive disadvantage. Given the mootness of the parties' motions to exclude expert testimony, the interests of the public are minimal. Therefore, the administrative motions to seal at Dkt. No. 132, 164, and 179 are granted with respect only to the materials related to the parties' motions to

1  exclude expert testimony.

## VII. CONCLUSION

Meta's motion for summary judgment on Shared's three claims for relief is granted. Shared's motion for partial summary judgment is denied as moot and on the merits. Both parties' motions to exclude expert testimony are denied as moot. Finally, the pending motions to file under seal are denied and granted as outlined above. Shared is directed to file unredacted versions of its Motion for Summary Judgment, Opposition to Defendant's Motion for Summary Judgment, and Reply in Support of Its Motion for Summary Judgment on the public docket.

**IT IS SO ORDERED**.

Dated: April 8, 2025

_____
RICHARD SEEBORG
Chief United States District Judge